Filed 5/24/13  M.S. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| M.S., | |
| Petitioner, | E058081 |
| v. | (Super.Ct.No. J234416) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Cheryl C. Kersey, Judge.  Petition denied.

Law Offices of Allen S. Remes and Allen S. Remes for Petitioner.

No appearance for Respondent.

Jean-Rene Basle, County Counsel, Kristina M. Robb and Adam Ebright, Deputy County Counsel, for Real Party in Interest.

1

In this petition M.F. (Father), the father of the dependent minor child M.S. (the minor), challenges an order setting a "selection and implementation" hearing pursuant to Welfare and Institutions Code section 366.26[1] with a consideration of adoption.[2] Insofar as his contentions are properly before this court, we find no error and deny the petition.

## STATEMENT OF FACTS[3]

The minor came to the attention of real party San Bernardino County Children and Family Services (CFS) in August of 2010 after her older sister, A.L., reported that she had been sexually abused by Father, A.L.'s stepfather. A dependency petition on M.S.'s behalf was filed alleging "failure to protect" and "sexual abuse of sibling" (§ 300, subds. (b) and (d).) A.L. was 16 at the time and M.S. eight. A.L. reported that Father sexually fondled her and otherwise molested her; M.S. reported that Father "washes her up" in the shower. Law enforcement personnel informed the social worker that there was domestic violence and substance abuse in the home. The parents' home appeared generally adequate, although there was little food as they had run out of money late in Father's pay period.

After a contested jurisdictional/dispositional hearing completed on January 12, 2011, the court found M.S. to come within multiple provisions of section 300, *including*

_____

[1] All subsequent statutory references are to the Welfare and Institutions Code.

[2] Mother (also M.S.) is not a party to this petition.

[3] Because our resolution of the case depends primarily on legal issues, we omit a detailed description of the factual and procedural history of the case except as relevant to the issues.

subdivision (d) in that she was at risk of sexual abuse because A.L. had been molested by Father and he had behaved inappropriately, in a sexual context, with M.S. M.S. was continued in foster care, in which she had been placed following detention. Reunification services were ordered for both parents. Father was ordered to participate in counseling concerning his role as a sexual abuser and domestic violence, as well as parenting and drug testing.

The six-month report filed on July 1, 2011, reflected that M.S. had adjusted well to her foster placement although she did "not understand what appropriate father/daughter boundaries are." The social worker had submitted referrals for the required counseling to Catholic Charities, but it was reported that Mother and Father had not been contacted. In June of 2011 Father told the social worker that he and Mother had independently enrolled in domestic violence and parenting classes. However, both he and Mother continued to deny the allegations of sexual impropriety. Services were ordered continued for another six months.

By the time the 12-month report was filed in early January 2012, the social worker indicated that Father had made "some . . . moderate progress." It was noted that the parents had refused to accept the services arranged by CFS but had attended services "of their own choosing." A psychologist arranged by CFS had telephoned several times to make an appointment, but there was no answer. When finally reached, Father refused to attend because he was working, although the psychologist offered evening appointments. Additional referrals for evening sessions approved by CFS were also rejected. Even more troubling to the social worker was the fact that the therapist who was providing

3

services to Father expressed disdain for the jurisdictional findings of sexual abuse and told the social worker that she did not believe Father had abused A.L.

Despite this, the report recommended the continuance of services. However, in an addendum filed about a month later, the recommendation was changed to termination of services. The social worker stated that although a letter had been received from the parents' therapist, notably absent from the recital of progress and goals was any issue of sexual abuse. It was also briefly indicated that M.S. was now disclosing instances of sexual abuse. A subsequently filed report elaborated that M.S. had been observed placing objects in her vagina and that she had told her foster mother that her parents used to "'take turns' playing with her (putting objects in her vagina) and they used to 'join her in the bathtub or in her bed.'" M.S. also told the social worker that her parents had touched her "private parts" in the bathtub and "it hurt;" she also said that this took place from the age of four until her eighth birthday, when she told them to stop. Also provided to the court was a report from a family therapist who was working with M.S., and who noted that M.S. demonstrated several signs of abuse such as excessive masturbation and bedwetting.

The court found that the parents have failed to participate regularly and make substantive progress in the reunification process and terminated services as of May 31, 2012. No appellate review was sought. The court also found that M.S. was not adoptable and did not schedule a hearing pursuant to section 366.26.

Next, on November 20, 2012, Father filed a request for modification under section 388 in which he asked to have M.S. returned to his custody. He presented certificates

4

from a domestic violence class and a parenting class, as well as the letter from his therapist previously filed by the social worker. Also attached was the transcript from an interview conducted with M.S. in February of 2012 in which she arguably disclaimed any abuse.[4] Finally, Father submitted a "psychosexual assessment," which concluded that he showed no signs of interest in "prepubescent" children[5] and did "not appear to demonstrate a deviant sexual interest." The assessor found that the "probability" that he had molested A.L. and would molest M.S. was "low."

Father's request was heard in connection with a status review hearing. (§ 366.) The minor was called to testify and said that she wanted to see Mother again, but that "I don't miss them."[6] She testified that her last visit with Father, perhaps three months earlier, "went good," but she felt "okay" when the visit ended. She also agreed that she had generally felt "safe" when living with her parents.

After hearing all the testimony—including from the foster mother—the court determined that a hearing should be held under section 366.26, but reinstated visits with Mother. Father's request was implicitly rejected.

---

[4] In this interview M.S. denied that her parents had put any objects in her vagina, and she described the "touching" in a manner which could be construed as non-sinister bathing and cleaning assistance. Her testimony was also consistent, however, with a reluctance to discuss the matter with a stranger. The transcript had already been introduced during the proceedings relating to the 12-month hearing.

[5] Although M.S. is prepubescent, A.L. was apparently an adolescent during the time she was abused by Father.

[6] Inquiry into the abuse allegations was prohibited by the court.

In this petition Father appears to argue that services were inadequate—that is the gist of the authorities he cites—but he also contends, or at least suggests, that no abuse occurred and that the minor should have been returned to his custody because he had completed every program. His claims are without merit.

DISCUSSION

First, as CFS points out, Father did not seek review of the order terminating reunification services which was made in May of 2012. At that time, the court found that reasonable services *had* been provided. Interlocutory appeal of orders subsequent to the jurisdictional/dispositional "judgment" is the rule in dependency proceedings. (§ 395; *In re S.B.* (2009) 46 Cal.4th 529, 532.) As no hearing under section 366.26 was set at that time, Father could have challenged this finding (and the subsequent termination of services) by appeal. (See *In re Julie M.* (1999) 69 Cal.App.4th 41, 43.) His attempt to raise the issue almost a year later in connection with a section 366.26, subdivision (*l*) hearing is unavailing. We also note that the termination of services was not based upon the conclusion that Father had not participated in services, which could have been due to the unavailability of adequate services. Father *did* participate in services, but the court found that he had not benefitted, and this is directly attributable to Father's failure to engage with a therapist who would help him explore the issues relating to the jurisdictional findings, not to the absence of adequate referrals.

Secondly, insofar as Father directly asserts that M.S. should have been returned to his custody, this position is also meritless. As we have suggested above, the difficulty is that by the time the trial court held the current status review and considered Father's

6

modification request, it had long since decided, by an unchallenged jurisdictional finding, that Father *did* sexually abuse A.L., and at the least behaved inappropriately with M.S. during bathing. The court's refusal to accept new evidence attacking this finding was perfectly proper. Given the jurisdictional finding, it was incumbent upon Father to at least make efforts to educate himself about the sexual abuse of children and to explore in therapy the boundaries of appropriate parent-child behavior. It was not Father's place to decide that he did not need therapy or counseling regarding conduct which the trial court found did occur.

## DISPOSITION

The petition for writ of mandate is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST _____
                                                                    Acting P. J.

We concur:


RICHLI _____
                          J.


MILLER _____
                          J.


7